**FILED**

**March 7, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 11:00 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| James Dockery, ) | Docket No. 2016-02-0511 |
| Employee, ) | |
| v. ) | |
| ) | State File No. 60592-2016 |
| Morristown Distribution Services, Inc., ) | |
| Employer, ) | |
| And ) | Judge Brian K. Addington |
| ) | |
| Cherokee Ins. Co., ) | |
| Carrier. ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on March 2, 2017, upon the Request for Expedited Hearing filed by James Dockery for medical benefits. Morristown Distribution Services disputes whether Mr. Dockery is entitled to the requested benefits because of his alleged willful misconduct pursuant to Tennessee Code Annotated section 50-6-110 (2016). The Court holds Mr. Dockery has come forward with sufficient evidence to establish he is likely to prevail at a hearing on the merits, and therefore he is entitled to the requested benefits.

### History of Claim

Mr. Dockery began working as a truck driver for MDS on February 8, 2016. As part of his orientation, he acknowledged a receipt of MDS' handbook and signed a written job description.

On August 5, 2016, while unloading freight from his truck, Mr. Dockery felt a pop and a burning sensation in his right shoulder and neck. On August 8, he reported his injury to MDS. MDS denied Mr. Dockery's claim, asserting he engaged in willful misconduct when he unloaded his truck without permission.

1

*Mr. Dockery's Version of Events*

Mr. Dockery testified that when he arrived at MDS' client's facility, no one was available to unload his cargo. He called Johnny Trent, MDS' driver manager, who gave him permission to unload the truck. As he unloaded the truck, he injured his shoulder and neck.

During the hearing, Mr. Dockery admitted MDS has a "no-touch" policy, which means that a driver does not unload his truck without express permission from MDS. Drivers instead use lumpers to unload the majority of loads. Mr. Dockery claimed drivers unloaded one percent of loads and that he received payment for unloading his truck through a miscellaneous notation on his check. He testified he would not have unloaded the truck if Mr. Trent had not given him permission.

*Mr. Trent's Version of Events*

Mr. Trent testified that he does not allow drivers to unload trucks. He stated that MDS adopted the "no-touch" policy in order to eliminate driver injuries. Previously, the company had several of its drivers suffer injuries as the result of unloading cargo. According to Mr. Trent, if there is not a lumper on site, the driver must take the load to another facility where available lumpers will offload the delivery. Afterwards, another trucking company will return the load to the client's facility. Mr. Trent testified that he never gives drivers authority to unload because he observed too many drivers suffering injuries while doing so.

Mr. Trent acknowledged that on the date of injury Mr. Dockery called and requested to unload the truck. However, Mr. Trent maintained that he did authorize Mr. Dockery to unload the truck. According to Mr. Trent, nothing in MDS' records indicated MDS paid either Mr. Dockery or lumpers to unload the truck.

Mr. Trent signed an undated statement prepared by Stephanie Headrick, safety manager, in which he stated that he told Mr. Dockery he did not want drivers unloading.

*Ms. Headrick's Version of Events*

Mr. Dockery spoke with Ms. Headrick and Mr. Trent when Mr. Dockery reported his alleged injury. She prepared two documents concerning the case: one for Mr. Trent and one for herself. She does not recall the date she prepared Mr. Trent's statement, but it mirrored Mr. Trent's testimony. She also explained a factual error contained in her statement. Her statement read that Mr. Dockery called to get approval to unload, and Mr. Trent did give him approval. However, Ms. Headrick testified that the statement is a typographical error and should read, Mr. Trent "did not give" Mr. Dockery approval to unload the truck. When questioned about which handbook was in effect at the time of

2

Mr. Dockery's injury, Ms. Headrick identified exhibit eight.

Ms. Headrick testified MDS did not discipline Mr. Dockery for his actions on the day of his injury.

*Job Description and Handbook*

According to the job description Mr. Dockery signed:

- ❖ Drivers must have basic knowledge of proper loading and unloading cargo-using devices such as two wheel hand trucks, carts, and pallet jacks.
- ❖ Drivers must have basic knowledge of proper loading and unloading procedures and blocking, bracing, and securement of cargo on vehicle.
- ❖ Drivers must be capable of performing lifting, bending, stooping, and reaching to accomplish loading and unloading trucks.

(Ex. 6.)

According to the MDS's handbook in effect at the time of the injury, "It is [MDS'] company policy that if a lumper is available, the lumper must be used for unloading. A driver cannot unload based on his own decision to do so." Further, "If you are required to assist in unloading, you must call dispatch before unloading, in order to be compensated." (Ex. 8 at 28.)

*Parties' Arguments*

During the hearing, Mr. Dockery asserted that Mr. Trent gave him permission to unload the truck because there were no lumpers at the client's location, and while doing so he injured his shoulder and neck. He received pay for unloading the truck, and MDS did not discipline or terminate him for his actions. He requested medical benefits in the form of a panel of physicians.

MDS asserted that Mr. Trent did not give Mr. Dockery permission to unload the truck, and according to the company handbook, a driver may not unilaterally elect to unload his truck. Mr. Dockery's actions constituted willful misconduct and the Court should deny his request for medical benefits pursuant to Tennessee Code Annotated 50-6-110 (2016).

**Findings of Fact and Conclusions of Law**

As in all workers' compensation actions, Mr. Dockery, as the claimant, has the

burden of proof on all essential elements of his claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Sept. 29, 2016). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, 2016 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2016). Instead, at an expedited hearing, Mr. Dockery must come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

MDS did not dispute that Mr. Dockery's injury arose primarily out of and in the course and scope of his employment. Rather, it argued that his actions constituted willful misconduct, pursuant to Tennessee Code Annotated section 50-6-110(a) (2016), which bars his claim. When denying a claim on this basis, the burden of proof rests with the employer. Tenn. Code Ann. § 50-6-110(b) (2016).

In *Roper v. Allegis Group*, 2017 TN. Wrk. Comp. App. Bd. LEXIS 14, at *6-7 (Feb. 10, 2017), the Workers' Compensation Appeals Board restated the four-part test espoused by the Tennessee Supreme Court in *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012), as the standard for adjudicating a willful misconduct defense. To prevail on this affirmative defense, MDS has the burden of establishing four elements: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule. *Id.* at *7.

The parties produced conflicting evidence on these points Mr. Dockery's job description contains several references to the requirement of unloading a truck. Moreover, MDS' handbook requires only 1) that a lumper must unload if a lumper is available, and 2) that a driver cannot make a unilateral decision to unload a truck. Mr. Trent testified he never gives drivers permission to unload trucks, yet Mr. Dockery's testimony that the employer allowed drivers to unload one percent of the time was unopposed. The Court finds that MDS will allow a driver to unload a truck, although the rule is a driver cannot unload based on his own decision to do so. Further, the Court finds that Mr. Dockery knew the rule because he requested permission to unload the truck.

However, MDS failed to prove Mr. Dockery knew there was a danger in unloading the truck. The handbook does not contain an absolute prohibition against unloading, and Mr. Dockery's job description appears to anticipate that drivers may, at times, have to unload a truck. It is MDS' burden to prove an inherent danger in drivers unloading cargo; it failed to do so. The handbook requires only that a driver get permission to unload; it does not forbid the practice entirely.

4

Further, MDS failed to prove its bona fide enforcement of the rule. Valid enforcement would require discipline of some sort for violating the rule. However, Ms. Headrick confirmed that Mr. Dockery suffered no discipline as a result of unloading his truck on the date of injury.

Finally, it appears to the Court that Mr. Dockery had a valid excuse for violating the rule. Although Mr. Trent allegedly did not give him permission to unload the truck, the evidence establishes there were no lumpers available to unload it. Mr. Trent testified that in those cases he would direct a driver to a different facility that had lumpers, and a different trucking company would take the load to the client. Yet, Mr. Trent did not direct Mr. Dockery to another facility and was adamant that no lumpers unloaded the truck. Since there were no lumpers and Mr. Dockery did not direct him to another facility, the Court finds Mr. Dockery had a reasonable excuse for unloading the truck, even if he did so "without permission."

Based on all the evidence presented, the Court holds MDS failed in proving the elements of a willful misconduct defense as set forth in *Mitchell* and, therefore has not successfully established its affirmative defense. Accordingly, the Court holds Mr. Dockery is likely to succeed at a hearing on the merits regarding the misconduct defense.

**IT IS, THEREFORE, ORDERED** as follows:

1. MDS shall provide Mr. Dockery with a panel of physicians in accordance with Tennessee Code Annotated section 50-6-204 (2016) and shall make an appointment with the physician he chooses from the panel.

2. This matter is set for a Scheduling Hearing on April 28, 2017, at 10:00 a.m. Eastern Time. The parties must call 855-943-5044 toll-free to participate in the hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Worker's Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

ENTERED this the 7th day of March, 2017.

/s/ Brian K. Addington

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. Affidavit of James Dockery
2. Wage Records
3. Receipt for Handbook
4. Statement by Stephanie Headrick-Safety Mgr.
5. First Report of Injury
6. Job Description
7. Employer's Handbook
8. Employer's Handbook in place at time of accident
9. Statement of Johnny Trent
10. Trip Summary Sheet (for identification only)

Technical Record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Written Statement for Expedited Hearing

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 7th day of March, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Ameesh Kherani, Esq. Employee's Attorney | | | X | akherani@dhdlaw@gmail.com |
| Daniel Hall, Esq. Employers' Attorney | | | X | Dhall@midkifflaw.com |

/s/ Penny Shrum
**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

8